IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRITZ G. DEJOIE, | ) | |
| | ) | Civil Action No. 14 – 1147 |
| Plaintiff, | ) | |
| | ) | District Judge Mark R. Hornak |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| LOUIS FOLINO, *et al.*, | ) | ECF No. 23 |
| | ) | |
| Defendants. | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the following reasons, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 23) be granted as to Plaintiff's claim against Folino, Winfield and Palya; denied as to Plaintiff's claim against Welda and Tennant; and denied as moot as to the request to dismiss any Fourteenth Amendment claim. It is further recommended that Plaintiff be allowed to amend his complaint to attempt to state a claim against Defendants Folino, Winfield and Palya.

## II. REPORT

Plaintiff Fritz DeJoie is an inmate in the custody of the Pennsylvania Department of Corrections and is currently confined at SCI-Graterford. He filed this lawsuit against SCI-Greene Superintendent Louis Folino, Deputy Superintendent Laranda Winfield, Unit Manager

Paul Palya and C.O.s Welda and Tennant. His Complaint[1] alleges that on May 2, 2013, while housed in Security Threat Group Management Unit ("STGMU"), a Level 5 maximum security program for prisoners considered to be high security risks, he was viciously attacked by another inmate. Plaintiff asserts Eighth Amendment claims for failure to intervene, deliberate indifference, and failure to train and supervise. All Defendants have joined in the Motion to Dismiss.

### A. Plaintiff's Allegations

Plaintiff alleges that on May 2, 2013, he and another prisoner from the STGMU, Inmate Frescatore, were taken from their cells to play a game of cards in the dayroom. They were not searched as required by policy and were shackled to a table. Frescatore attacked Plaintiff with a sharp weapon and cut his face and neck. ECF No. 7-1 at ¶¶ 23-27. Corrections Officer Welda did not intervene, but rather ran away from the scene. Id. at ¶ 28. Corrections Officer Tennant separated the two inmates. Id. at ¶ 29. Plaintiff alleges that Defendants Welda and Tennant failed in their duties by not searching the inmates before taking them from their cells, id. at ¶ 13, and by not having a panic button or spray device as required by DOC policy, Id. at ¶¶ 32, 33. Plaintiff further alleges that Defendants Folino, Winfield and Palya failed to enforce DOC policies to ensure inmate safety and failing to adequately train staff. Id. at ¶ 40. He was then brought to medical. Id. at ¶¶ 16, 19.

### B. Standard of Review

---

[1] When Plaintiff initially filed his Complaint he was proceeding *pro se*. Counsel entered an appearance on Plaintiff's behalf on March 12, 2015 but did not file an Amended Complaint. Therefore, for the purpose of reviewing the allegations of the Complaint the Court will apply liberal construction standards. *See Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d Cir. 2003).

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

**C. Discussion**

1. Failure to State a Claim as to Folino, Winfield and Palya

Defendants Folino, Winfield and Palya move to dismiss Plaintiff's Complaint for failure to show that they had sufficient personal involvement in the alleged wrongdoing. Plaintiff, however, seeks to hold these Defendants liable based on their actions as supervisors.

a. Personal Involvement/Supervisor Liability

To establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory

liability' is a misnomer." Iqbal, 129 S. Ct. at 1949. Instead, each Government official, regardless of his or her title, is only liable for his or her own misconduct. Id. However, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

The Third Circuit Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or failure to supervise – are generally considered a subcategory of policy or practice liability. See *Rosalie Berger Levinson, Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post Iqbal/Connick World*, 47 Harv. C.R. – C.L. L.Rev. 273, 280 (2012).

In Sample v. Diecks, the Third Circuit recognized that "'supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." 885 F.2d at 1116. Sample

involved an Eighth Amendment claim against a supervisor for implementing deficient policies and being deliberately indifferent to the risk that the policies would result in the deprivation of a constitutional right. Id.; *see also* Beers-Capitol v. Whetzel, 256 F.3d 120, 133-34 (3d Cir. 2001) (discussing Sample). The Court developed a four-part test for determining whether an official may be held liable on a claim for failure to supervise. The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample, 885 F.2d at 1118; Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001). In this Circuit, when a plaintiff seeks to hold a defendant liable under the Eighth Amendment in his or her role as a supervisor, "Sample's four-part test provides the analytical structure . . . ., it being simply the deliberate indifference test applied to the specific situation of a policymaker." Whetzel, 256 F.3d at 135.

      b. Sufficiency of the Complaint

That Plaintiff has alleged supervisory liability claims does not mean that he has supported those allegations with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.17 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949), as is required by the seminal Supreme Court decisions in

Iqbal and Twombly.² While detailed factual allegations are not required, the pleading must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s].'" Iqbal, 129 S. Ct. at 1949 (alteration in original) (quoting Twombly, 550 U.S. at 555, 557). Accordingly, the basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citing Twombly, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This "plausibility" standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully. Id. Therefore, a complaint pleading facts that are merely consistent with liability is insufficient. Id.

    c. <u>Allegations</u>

Plaintiff's principal contention is that the Constitution imposed on all three defendants a duty to train and supervise their subordinates so as to protect Plaintiff's constitutional rights from violation. He alleges simply that because the corrections officers failed to follow DOC policy they were not adequately trained. (ECF No. 7-1 ¶¶ 22 and 40.) He further alleges that these Defendants failed to ensure that all officers had a panic button or spray device as required by an unnamed DOC policy. (ECF No. 7-1 ¶ 33.) Plaintiff also alleges that there is a practice in the STGMU of not properly conducting required searches of inmates upon removal from cells.

---

² The Third Circuit recently held that the standard announced in Sample for imposing supervisory liability based on an Eighth Amendment violation is consistent with Iqbal. Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 320 (3d Cir. 2014).

(ECF No. 7-1 ¶ 21.)  There are no other allegations against Defendants Folino, Winfield and Palya.

In the Responsive brief filed by counsel on behalf of Plaintiff they argue that these three Defendants failed to properly train correctional staff on the DOC policies in question (i.e., conducting strip searches and carrying a panic button or spray device) as evidenced by the practice of staff in the STGMU, and that these Defendants were aware of or should have been aware of this conduct and failed to correct it through appropriate training.

The Court does not agree that these bare allegations are sufficient to state a claim against the three supervisory defendants.  There is insufficient factual content from which the Court can draw a reasonable inference that the corrections officers' actions in this case were the result of not being properly trained on DOC policies or that the supervisory defendants were aware that staff in the STGMU had a practice of not following DOC policy when removing inmates from their cells and were indifferent to the risks that it posed on the safety of inmates.  Accordingly, Plaintiff has not sufficiently pled the requisite level of personal involvement as to Defendants Folino, Winfield and Palya, and the Defendants' motion should therefore be granted.

   2. <u>Failure to State a Claim as to Welda and Tennant</u>

Counsel for Defendants contend that taking Plaintiff's allegations regarding an inadequate search as true, Welda and Tennant's actions fail to rise to the level of deliberate indifference as required to state a failure to protect claim under the Eighth Amendment.

Not "every injury suffered by one prisoner at the hands of another . . . translates into a constitutional liability for prison officials responsible for the victim's safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  However, "[b]eing violently assaulted in prison is simply not 'part of

the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).

To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the officials was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Farmer, 511 U.S. at 834; Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).

"Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). It is not sufficient that the official should have known of the risk. Id. at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Prison officials may escape liability for deliberate indifference claims in several ways. They "might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. Id. at 845; *see also* Hamilton, 117 F.3d at 746

(noting that prison officials have "a duty . . . to take reasonable measures to protect prisoners from violence at the hands of other prisoners") (quotation marks omitted).

Defendants argue that Welda and Tennant were, at most, negligent, and that "mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under Section 1983." Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Soto v. Johansen, 137 F.3d 980, 981 (7th Cir. 1998) ("[m]ere negligent or even gross negligence does not constitute deliberate indifference") (quoting Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997)).

The Court disagrees with Defendants' application of the failure to protect standard in this case and finds that Plaintiff has set forth sufficient facts that, if taken as true, state a cause of action against Defendants Welda and Tennant. Therefore, it is recommended that Defendants' motion be denied as to those Defendants.

Defendants also argue that Plaintiff fails to identify by name any policy that was violated, but he cannot state a claim based on such violation because a prison manual does not have the force of law and therefore a violation of policy does not amount to a constitutional violation. Whether said policies exist will be determined through discovery and, while the Court agrees that the failure to follow a policy does not give rise to a constitutional violation, it could inform the determination of deliberate indifference.

3. Fourteenth Amendment Claims

Defendants move to dismiss Plaintiff's Fourteenth Amendment claims as being duplicative of his Eighth Amendment claims. *See* Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized

notion of substantive due process, must be the guide for analyzing these claims.") In response, Plaintiff states that the reference to the Fourteenth Amendment in his Complaint is nothing more than an acknowledgement of the applicability of the Eighth Amendment to the States by virtue of the Due Process Clause of the Fourteenth Amendment. Plaintiff states that he is not asserting a separate Due Process Clause apart from his Eighth Amendment claim and agrees that the standards and law developed under the Eighth Amendment should be applied here. Because there appears to be no disagreement among the parties as to the specific law governing Plaintiff's causes of action, Defendants' motion should be denied as moot on this issue.

4. Amendment of the Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). It does not appear that allowing for amendment of the Complaint would necessarily be futile with respect to Plaintiff's claim against Defendants Folino, Winfield and Palya. Therefore, he should be allowed to amend his Complaint to attempt to state a claim against these individuals.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 23) be granted as to Plaintiff's claim against Folino, Winfield and Palya; denied as to Plaintiff's claim against Welda and Tennant; and denied as moot as to the request to dismiss any Fourteenth Amendment claim. It is further recommended that Plaintiff be allowed

to amend his complaint to attempt to state a claim against Defendants Folino, Winfield and Palya.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: June 8, 2015.

                                              Lisa Pupo Lenihan
                                              United States Magistrate Judge

cc: Counsel of record