IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRITZ G. DEJOIE, | ) | |
| | ) | Civil Action No. 14 – 1147 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| FOLINO, *et al*., | ) | |
| | ) | ECF No. 49 |
| Defendants. | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the following reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment (ECF No. 49) filed by Defendants Thomas Tennant and Richard Welda.

## II. REPORT

### A. Procedural Background

Plaintiff Fritz G. DeJoie, an inmate at the State Correctional Institution at Forest, initiated the instant prisoner civil rights action on August 22, 2014,[1] pursuant to 42 U.S.C. § 1983. His Complaint was docketed on September 16, 2014. (ECF No. 7.) Defendants Louis Folino, Loranda Winfield, Paul Palya, Thomas Tennant, and Richard Welda, responded by filing a

---

[1] This is the filing date under the "mailbox rule." Pennsylvania and federal courts employ the prisoner mailbox rule. *See* Perry v. Diguglielmo, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing Commonwealth v. Little, 716 A.2d 1287 (Pa. Super. Ct. 1998)); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing. *See* Burns, 134 F.3d at 113; Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).

1

Motion to Dismiss for failure to state a claim that was docketed on February 10, 2015. (ECF No. 23.) In the Report and Recommendation adopted by Judge Hornak, this Court recommended that the Motion to Dismiss be granted as to the claims against Defendants Folino, Winfield, and Palya, but denied as to the claims against Welda and Tennant. (EFC No. 33.) Defendants Tennant and Welda filed their Motion for Summary Judgment on May 10, 2016. (ECF No. 49.) The Motion is now ripe for review.

    **B. <u>Factual Background</u>**

On May 2, 2013, Plaintiff was an inmate at the State Correctional Institute at Greene. (ECF No. 7-1, ¶ 10.) Plaintiff was a part of the Secure Threat Group Management Unit ("STGMU") which houses prisoners considered to be high security risks with affiliation to a security threat group. (ECF No. 7-1, ¶ 11.) The STGMU program assigns inmates to five phase levels, starting at Phase 5, with the inmate acquiring more privileges as they advance to the next phase level based on good behavior. (ECF No. 7-1, ¶¶ 15-16.) On the date in question, Plaintiff had Phase 4 status. (ECF No. 7-1, ¶¶ 18-19.) STGMU policy requires all inmates in Phases 5-2 to be strip-searched when they exit their cells for any reason. (ECF No. 55, at pp. 3-4, ECF No. 52-1, at pp. 25-26.) The search procedure requires that the inmate first remain in the cell, handing all clothing to the officer through the wicket in the cell door. (ECF No. 55, at pp. 3-4.) After the officer checks the inmate's clothing for contraband by shaking out the clothing pieces, the inmate is supposed to exit the cell and show the officer various parts of the body that has the potential to conceal contraband. (ECF No. 52-1, at pp. 19-20, ECF No. 52-2, at pp. 23-24.) On the day of the incident, Plaintiff and an inmate named Frescatore were both brought out of their cells and to the day room where they were to play a card game. (ECF No. 7-1, ¶ 23.) When both

inmates had been shackled to a table, Mr. Frescatore attacked Plaintiff with a sharpened weapon, slicing his face and neck. (ECF No. 7-1, ¶ 27.)

The parties do not dispute the fact that Defendants failed to conduct a proper strip-search of the Plaintiff and Mr. Frescatore pursuant to STGMU policy. Officer Tennant admits in his deposition that he and Officer Welda were "lackadaisical" in shaking out Plaintiff's clothing and did not do a "good strip search." (ECF No. 52-1, at p. 27.) He goes on to explain that he and Officer Welda did not make either inmate get completely naked, only down to their boxers. (ECF No. 52-1, at p. 28-29.) Officer Welda also admits that a proper search was not conducted of Plaintiff. (ECF No. 52-2, at p. 28-29.) Officer Welda does not know whether a proper search was conducted of Mr. Frescatore because he was not looking into Mr. Frescatore's cell while Officer Tennant performed the search. (ECF No. 52-2, at p. 27.) Both Defendants aver that they had not observed any problems between Plaintiff and inmate Frescatore in the past. Officer Tennant asserts that Plaintiff actually requested for Mr. Frescatore to go to the day room with him, and Mr. Frescatore agreed. (ECF No. 52-1, at pp. 23-24.) Officer Tenant also recalls that the two inmates used to talk while they were out in the yard together. (ECF No. 52-1, p. 24.) Officer Welda recalls, "we weren't really feeling them being mad at each other or aggravated at each other. Everybody was quiet." (ECF No. 52-2, at p.26.)

Plaintiff asserts that the failure to conduct proper strip searches was "part of a systematic disregard of prison policy," that this was "how things were usually done." (ECF No. 54, at p. 9.) Officer Tennant testified that the incident in question was the first time that he had not properly strip-searched an inmate, and that, to his knowledge, he has not seen anybody not strip search the prisoners. (ECF No. 52-1, at p. 35.) Officer Welda testified that when it comes to working in the

STGMU unit, the incident in question was the first time that he had not properly strip-searched an inmate. (ECF No. 52-2, at p. 26.)

A number of sharp objects were found to be hidden in Mr. Frescatore's jumpsuit and shoes. Plaintiff was initially issued a misconduct for the fight, which the hearing examiner then dismissed without prejudice based on video footage of the incident. The examiner found that Plaintiff was acting in self-defense. (ECF No. 7-1, ¶¶ 35-37.)

### C. **Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. Nat'l State Bank v. Fed.l Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing Celotex, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963). *See also* Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating

the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing Celotex, *supra*).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

**D. Discussion**

Plaintiff contends that, in failing to conduct a proper search of Inmate Frescatore, Defendants Welda and Tennant demonstrated deliberate indifference to his personal safety which resulted in serious bodily harm to him, thereby violating his Eighth and Fourteenth Amendment rights under the United States Constitution. (ECF No. 7-1, ¶ 42.) Defendants argue that Plaintiff has failed to establish a failure to protect claim against them, and thus summary judgment is proper. (ECF No. 50.)

In Jones v. Day, No. 03 1585, 2007 WL 30195 (W.D. Pa. Jan. 4, 2007), this Court stated:

> The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures " 'to protect prisoners from violence at the hands of other prisoners.' " [Hamilton v. Leavy,] 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811(1994)). Although, "[i]t is not … every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison official responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 551 U.S. at 834 (*quoting* Rhodes v. Chapman, 452 U.S. 337, 345 101 S.Ct. 1970, 128 L.Ed.2d 59 (1981)). A plaintiff must prove more than that he had a fight with another inmate, see Beard v. Lockhard, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 88 L.Ed.2d 677

5

(1986). To succeed, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be). Hamilton v. Leavy, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by a circumstantial evidence." Id. In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Thus, in order to survive defendants' summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants "'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir.2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." Id. at 138.

Jones, 2007 WL 30195, at *3-4.

Defendants argue that the record demonstrates that they were, at most, negligent when they did not conduct proper strip searches of Plaintiff and Mr. Frescatore as per STGMU procedure. (ECF No. 50, at p. 4.) Defendants also argue that there is no evidence to support the contention that they "knowingly and unreasonably disregarded an objectively intolerable risk of harm." (ECF No. 50, at p. 5.) They cite to testimony of Officer Tennant that Plaintiff had requested Mr. Frescatore to go with him to the day room, and that Mr. Frescatore agreed when asked if he wanted to go with Plaintiff. (ECF No. 50, at p. 5.) Thus, Defendants submit that based on a subjective test of the officers' mindsets—what they actually knew rather than what

6

they should have known—they did not know that the two inmates would start fighting. (ECF No. 50, at p. 5.)

Plaintiff responds that the strict precautions taken with prisoners in the STGMU unit puts corrections officers on notice that these prisoners pose inherent dangers to each other and themselves. (ECF No. 54, at p. 8.) Plaintiff further contends that Officers Tennant and Welda not only knew of such risks, but were deliberately indifferent to these risks, especially in light of Plaintiff's assertion that the failure to conduct proper strip searches was "part of a systematic disregard of prison policy." (ECF No. 54, at p. 9.) Plaintiff cites to <u>Bracey</u> and points out that the court in that instance denied the Motion to Dismiss with respect to the Plaintiff's Eighth Amendment claim stemming from having been assaulted in a prison yard that was known for frequent prisoner assaults. <u>Bracey v. Pa Dep't of Corr</u>., No. 11-4E, 2012 WL 750911, at *2-3 (W.D. Pa. Feb. 17, 2012). Plaintiff argues that because the court in <u>Bracey</u> found that a proper claim was stated, based on facts that are similar to those facts in the instant case, this Court should deny summary judgment because there is a genuine issue of material fact as to whether the Defendants subjectively knew of the risk of a prisoner assault in this case and were deliberately indifferent, thereby failing to protect Plaintiff from the harm he ultimately suffered. (ECF No. 54, at pp.10-12.)

Defendants counter that the court in <u>Bracey</u> ultimately granted summary judgment in favor of the Defendants, which decision was affirmed by the Third Circuit. (ECF No. 56, at p. 2.) Defendants maintain that Plaintiff has failed to provide any evidence that Defendants knew of the dangers of an improper strip-search and that they deliberately disregarded such dangers. (ECF No. 56, at p. 3.)

There appears to be a discrepancy in the record as to whether the failure to strip-search inmates was a pervasive, systematic practice by the corrections officers on the STGMU unit, or whether it was an isolated incident. Plaintiff's assertions do not necessarily conflict with the testimonies of Officers Tennant and Welda, as the officers only testified to their own actions and their limited observations of other officers' actions. Officer Tennant's testimony suggests that he never witnessed any other corrections officer improperly strip-search inmates, which would conflict with Plaintiff's allegations. (ECF No. 52-1, at p. 34.) Nevertheless, the Court does not view this discrepancy as a genuine issue of material fact. The Court is unconvinced by Plaintiff's argument that a systematic disregard for adhering to the strip-search policy necessarily implies that Defendants subjectively knew of the risks of doing so, and deliberately disregarded the risks. An informal but systematic practice of lackadaisical strip-searching, were it to be the case, could just as well suggest that lax strip-searches have not led to any incidents for the officers in the past, and therefore the officers were not aware, even though they should have been, that they were putting the inmates or themselves at any risk. In either case, the issue of the pervasiveness of this practice is immaterial to meeting the burden to show that Defendants were more than simply negligent when they failed to properly strip search him and Mr. Frescatore.

In cases where a prisoner was attacked and hurt by a fellow prisoner, the Third Circuit has repeatedly found that, under the standards of a failure to protect claim, prison officials were not aware of a serious risk where there has been no previous incidents of violence between the attacker and the attacked, even if officials had notice of threats or potential for violence before the attack happened. See Bizzell v. Tennis, 447 F. App'x 112 (3d Cir. 2011) (defendants were entitled to summary judgment as to Plaintiff's failure to protect claim because lack of prior fighting between the two inmates involved, even though Plaintiff had informed officers that his

cellmate was "crazy," does not indicate that Defendants were aware of a serious risk); Blanchard v. Gallick, 448 F. App'x 173 (3d Cir. 2011) (summary judgment was proper because defendants did not act with deliberate indifference after Plaintiff received two threats from his cellmate and was moved to a different cell, after having been previously attacked by a different cellmate); Carter v. Lawler, 446 F. App'x 420 (3d Cir. 2011) (corrections officers were not deliberately indifferent to excessive risk of harm to prisoner, because officers had no prior knowledge or warning that the prisoner would be involved in an altercation with the other inmate); Blackstone v. Thompson, 568 F. App'x 82 (3d Cir. 2014) (affirming summary judgment because prisoner failed to show that corrections officers both knew of and were deliberately indifferent to an excessive risk to his safety, where there were no longstanding, pervasive, well-documented or previously noted tensions between prisoner and his cellmate). Even when there was a direct threat against an inmate by another inmate, the Third Circuit has found insufficient evidence that the officers were deliberately indifferent to a substantial risk. Freeman v. Miller, 615 F. App'x 72 (3d Cir. 2015) (summary judgment was proper in finding that corrections officers were not deliberately indifferent when they issued a disciplinary warning to prisoner after said prisoner told them he would stab his cellmate, but the officers took no further action to prevent the eventual attack that occurred).

Here, both parties concede that there had been no previous threats of violence against Plaintiff by Mr. Frescatore leading up to the incident in question, nor did the two men ever engage in fighting, or reported fears of violence against one or the other. In fact, when Plaintiff was asked if he wanted to go to the day room, Plaintiff requested Mr. Frescatore's presence. The Defendants do not address in their brief in support of the Motion for Summary Judgment, nor do they in their response to Plaintiff's opposition, the issue of whether Plaintiff established the first

9

two elements of the prima facie case for a failure to protect claim as outlined in Farmer. Given the strict safety procedures on the STGMU unit, as well as the type of prisoners it houses, it is reasonable to assume that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, and that any correctional officer or prison official working on the unit and familiar with its policies are aware of the facts from which they could potentially infer that a substantial risk of harm exists. However, even if Plaintiff can be found to have plausibly established these two elements, he fails to offer evidence to support the assertion that Defendants "knowingly and unreasonably disregarded an objectively intolerable risk of harm." Beers-Capitol, 256 F.3d at 132. In the Bracey case that Plaintiff cites in support of his opposition to this Motion, even when there have been previous incidents of fighting in a specific location, i.e. the exercise yard, the Third Circuit has found summary judgment proper in favor of the defendants because nine incidents over a two-year period failed to demonstrate a "pervasive or well-documented substantial risk of harm" to Mr. Bracey. Bracey, 571 F. App'x 75, at 78. Nor did the court in Bracey find the officers to be deliberately indifferent when they failed to follow a number of prison policies, which failure resulted in the attack on Mr. Bracey. Id. at 78-79. The facts at hand fall well short of the above circumstances, similar to this case, which found the correctional officers to be nothing more than negligent. Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment (ECF No. 49) filed by Defendants Tennant and Welda.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: September 19, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Counsels of record
 *Via CM/ECF Electronic Mail*